407 S.W.2d 600 (1966)
M_______ L______, Plaintiff-Appellant,
v.
M_______R_______, Defendant-Respondent.
M_______L________, Plaintiff-Respondent,
v.
M________R________, Defendant-Appellant.
Nos. 8551, 8560.
Springfield Court of Appeals, Missouri.
October 3, 1966.
*601 Sam F. Hamra, Jr., Springfield, for plaintiff.
Moore, Pettit & Keeter, Aurora, for defendant.
STONE, Presiding Judge.
These consolidated cross-appeals by plaintiff M___ L___ (hereinafter referred to as the mother) and by defendant M___ R___ (hereinafter referred to as the father) bring to us for review an order of the circuit court modifying upon the mother's motion (but not to the extent sought) the custodial provisions of a decree entered on January *602 31, 1964, which reflected the mother's voluntary dismissal of her petition for divorce, granted a divorce to the father upon his cross-complaint, and awarded him custody of the only child, an adopted boy K___ then two years of age, subject only to the mother's right of reasonable visitation.
In her motion to modify filed on May 17, 1965, the mother averred, inter alia, that on October 16, 1964, she had married one G___, an over-the-road bus driver; that she and G___ were buying "a three-bedroom home with a fenced backyard" in a metropolitan area in another state; and that, if given the custody of the boy, she would devote her full time to his care and would rear him "in a proper and adequate environment."
Since the morals of the respective parents are an appropriate subject of consideration in this child custody case [L___ v. N___, Mo.App., 326 S.W.2d 751, 755(8); Hurley v. Hurley, Mo.App., 284 S.W.2d 72, 74(4)], the court quite properly received, at the hearing on December 16, 1965, considerable testimony pertaining to the mother's alleged misconduct with G___ beginning on the night of April 17, 1963, when the father and mother separated, and continuing intermittently through October 1, 1963, when G___ and his second wife were divorced, and January 31, 1964, when the father was granted a divorce from the mother on his cross-complaint, to the marriage of the mother and G___ on October 16, 1964. S___ v. G___, Mo.App., 298 S.W.2d 67, 75-76. In view of the present agreement of the parents as to the proper disposition of these appeals (of which more anon), we need not record here such admissions of misconduct as the mother and G___ made at the hearing or descend into unsavory factual details and odious inferences. Suffice it to say that it is altogether understandable why the court, in the original decree of January 31, 1964, awarded full custody of the boy to the father, subject only to the mother's right of reasonable visitation.
It is a trite principle that a custodial order once made becomes as conclusive as any other order [Schumm v. Schumm, Mo.App., 223 S.W.2d 122, 126; Brake v. Brake, Mo.App., 244 S.W.2d 786, 801; Lehr v. Lehr, Mo.App., 264 S.W.2d 35, 37] and may be disturbed only upon proof of changed conditions subsequent to entry of the order coupled with a showing that modification of the order would promote the best interests of the child or children involved. P___ D___ v. C___ S___, Mo.App., 394 S.W.2d 437, 439(1); Hirsch v. Hirsch, Mo.App., 366 S.W.2d 484, 489 (3-5); Frame v. Black, Mo.App., 259 S.W.2d 104, 108(4). But counsel for the mother vigorously emphasized in the trial court (and upon submission here) that the mother's prior transgressions of the moral law did not necessarily require that she be denied custody of the boy upon her subsequent motion to modify [Johns v. McNabb, Mo., 247 S.W.2d 640, 643; Yount v. Yount, Mo.App., 366 S.W.2d 744, 748(7); Knepper v. Knepper, 139 Mo.App. 493, 122 S.W. 1117] and ably presented evidence designed to support his insistence that both the mother and G___ (now her husband) had repented of their former transgressions. Ex parte Ferone, Mo.App., 267 S.W.2d 695, 698, 700. Contrast Graves v. Wooden, Mo.App., 291 S.W.2d 665, 669(5). And in the order of modification entered on December 24, 1965, the trial court found "that there has been a substantial change of condition since the divorce was granted on January 31, 1964, in that, among other things, plaintiff [mother] has remarried and has an established and good Christian home; plaintiff and her husband [G___] are compatible; they are congenial with the [boy] and desire to and can furnish a good home in which K___ can be with them; and it is for K's best interests and welfare that the original decree be modified, as provided herein, because of such change of condition."
Accordingly, the court modified the custodial provisions of the original decree (which had awarded the father full custody *603 of the boy subject only to the mother's right of reasonable visitation) by leaving major custody with the father but granting to the mother minor custody for (a) a forty-five day period each summer, (b) "one week-end beginning 5:00 P.M. Friday until 5:00 P.M. Sunday . . . in each even-numbered calendar month" and "one week-end beginning 5:00 P.M. on Wednesday until 9:00 A.M. Sunday . . . in each odd-numbered calendar month" insofar as such week-end custody would not interfere with the boy's attendance at school, and (c) a ten-day Christmas vacation period (including Christmas Day) and the "Easter school vacation" in even-numbered years. The order of December 24, 1965, also included several additional provisions calculated to minimize friction and disagreement between the parents incident to the frequent transfers of custody, e. g., requirements (a) that the mother give to the father written notice by registered mail not less than seven days prior to the beginning date of each period of permissive custody selected by her, (b) that the mother or one of her parents personally pick up the boy and redeliver him, and (c) that all expense incident thereto be borne by the mother. Within the period of thirty days during which the trial court retained control over the order of December 24, 1965, to "vacate, reopen, correct, amend or modify [it] for good cause" [V.A.M.R. Rule 75.01], to wit, on January 20 and again on January 21, 1966, the court amended the order of December 24, 1965, in minor and here unimportant particulars.
Relying upon the hereinbefore-quoted findings of the trial court and the oft-repeated statement that, all things being equal, the custody of a child of tender years belongs with the mother [see cases collected in 11 West's Missouri Digest under Divorce, 298(6), and in 22A West's Missouri Digest under Parent and Child, 2(3.2)], counsel for the mother initially pressed us, both by brief and by oral argument, to direct the trial court to grant full custody of the boy to the mother subject only to the father's right of reasonable visitation. But as we recently observed "all things never are exactly equal" [Garbee v. Tyree, Mo. App., 400 S.W.2d 193, 199]; and a profusion of cases convincingly demonstrates that the courts are not reluctant to entrust children into their father's care and custody, where the best interests of the children will be served thereby. Copenhaver v. Copenhaver, Mo.App., 402 S.W.2d 612, 615 (4, 5); Wood v. Wood, Mo.App., 400 S.W.2d 431; Jaros v. Jaros, Mo.App., 395 S.W.2d 217, 220(5); Jennings v. Jennings, Mo.App., 379 S.W.2d 159, 162-163; Derringer v. Derringer, Mo.App., 377 S.W. 2d 513; Crowley v. Crowley, Mo.App., 360 S.W.2d 293, 297(7, 8); C___ v. B___, Mo.App., 358 S.W.2d 454, 459; Thomas v. Thomas, Mo.App., 357 S.W.2d 208; Harwell v. Harwell, Mo.App., 355 S.W.2d 137, 143; Davis v. Davis, Mo.App., 354 S.W.2d 526, 528(3); Tootle v. Tootle, Mo.App., 329 S.W.2d 218, 224; L___ v. N___, supra, 326 S.W.2d at 755(6), and cases cited in note 8. The only rigid, inflexible and unyielding principle in custody cases is that the welfare of the child is paramount and supreme [see cases collected in 11 Missouri Digest under Divorce, 298.1, in 22A Missouri Digest under Parent and Child, 2 (3.1), and in 15A Missouri Digest under Infants, 19.2(2)], and perplexing problems of custody must be resolved not by applying academic rules or by mouthing pious platitudes but rather by determining, insofar as is humanly possible, what will best serve and promote the child's welfare. P___ D___ v. C___ S___, supra, 394 S.W.2d at 446; C___ v. B___, supra, 358 S.W.2d at 459.
The father, now thirty-five years of age and single, and the boy live with the father's widowed mother in her comfortable home in a wholesome Ozark community having a population of approximately 1,250 persons. The paternal grandmother, now sixty years of age, is in excellent health and does not work outside the home. The father and his unmarried sister, a registered pharmacist, own and operate a drug store, from which the father derives a modest but *604 adequate income. He usually goes home for lunch and does not work evenings or Sundays. His minister confirmed the regular attendance of both father and son at church services, and there is not a scintilla of evidence in any wise reflecting upon the father's reputation and character. In short, the father "is doing a good job [in rearing the son] and there is no evidence to the contrary." Ballew v. Ballew, Mo.App., 288 S.W.2d 24, 26; Ragan v. Ragan, Mo.App., 315 S.W.2d 142, 147. The boy, now five years old, is verging on an age at which the guidance, direction, supervision, companionship and love of an understanding father will be most needed and beneficial. Davis v. Davis, supra, 354 S.W.2d at 531; Green v. Perr, Mo.App., 238 S.W.2d 924, 927; Wood v. Wood, supra, 400 S.W.2d at 437 (9). See Lewis v. Lewis, Mo.App., 301 S.W.2d 861, 863; Fordyce v. Fordyce, Mo. App., 242 S.W.2d 307, 314; Baer v. Baer, Mo.App., 51 S.W.2d 873, 879.
Of course, we recognize that, where neither parent is unfit, the best interests of a minor child usually are served by some arrangement which will permit his association with both parents [Kimble v. Kimble, Mo.App., 399 S.W.2d 630, 635; Patterson v. Patterson, Mo.App., 375 S.W.2d 614, 621(5); Dupree v. Dupree, Mo.App., 357 S.W.2d 241, 243(3); Lewis v. Lewis, supra, 301 S.W.2d at 863(5); Fago v. Fago, Mo.App., 250 S.W.2d 837, 842; Lambert v. Lambert, Mo.App., 222 S.W.2d 544, 548(6)], and the decree of the capable and conscientious trial judge obviously was prepared with that in mind. Mindful of the salutary principle that the findings of the trial court are not to be lightly regarded or easily disturbed but that we should defer thereto unless firmly convinced that the child's welfare requires some other disposition, we accept the hereinbefore quoted findings in the order of December 24, 1965, as indicating the mother's fitness to associate with the boy at that time. However, we are moved to the parenthetical comment that, in view of the sorry connubial record of both the mother and G___ (her present husband) and their relatively recent moral misconduct, it would be crowding time to expect any court to completely disregard the past, to be comfortably assured that their professed repentance is soul-centered and their moral reformation is permanent, and to confidently conclude not only that their present home is now an altogether stable and proper one for children but also that it will continue to be. The passage of time alone can resolve those doubts and uncertainties. S___ v. G___, supra, 298 S.W.2d at 77; In re J___, Mo. App., 357 S.W.2d 197, 200; Irvin v. Irvin, Mo.App., 357 S.W.2d 254, 256. In the meantime, we are no more disposed than was the trial judge to deny the mother reasonable opportunities for association with the boy.
However, as we frankly commented to counsel at the time of oral argument and submission in this court, we have been concerned as to whether the boy's best interests would be furthered by such elaborate and involved provisions as were embodied in the order of December 24, 1965, with respect to frequent "week-end" periods of varying lengths in the mother's custody. For, we are of the same mind as others who, in agonizing over similar problems, have voiced the opinion that the best interests of a child, from the standpoint of engendering in him a feeling of security and stability, are not served by frequent shifts in custody from one home to another. Wood v. Wood, supra, 400 S.W.2d at 437(8); Kimble v. Kimble, supra, 399 S.W.2d at 634(7).
Subsequent to the date of oral argument and submission, opposing counsel had further discussions concerning the mother's periods of temporary custody and, on September 27, 1966, the parties filed in this court their joint motion requesting us to enter an order (a) setting aside the order of December 24, 1965, and the amending orders of January 20 and 21, 1966, and (b) directing the circuit court to enter an order modifying the custodial provisions of the original decree of January 31, 1964, in accordance *605 with the voluntary agreement of the parties embodied in their joint motion. Generally speaking, that voluntary agreement is in keeping with our views as to a proper and appropriate arrangement enabling the boy to associate with both parents; and, upon careful consideration of the voluntary agreement with an eye single to the best interests of the boy, we are constrained to approve it and to grant the prayer of the joint motion. In this connection, we commend counsel for both parties for their constructive approach to the problem at hand, their willingness and desire to re-examine the entire situation with a view to furthering the best interests of the boy as well as their respective clients, and their ability to reach a meeting of the minds on so controversial a matter.
It is the order and judgment of this court (a) that the joint motion of the parties be sustained; (b) that the order of modification entered in the Circuit Court of Greene County, Missouri, on December 24, 1965, and the amending orders of January 20 and 21, 1966, should be and hereby are set aside and for naught held; (c) that this cause should be and hereby is remanded to said circuit court with directions (1) to re-enter the first paragraph of the order of December 24, 1965, which includes the court's findings, and (2) upon those findings to enter the following order and decree of modification (in accordance with the voluntary agreement of the parties embodied in their joint motion), to wit:
"(a) That the Circuit Court of Greene County, Missouri, shall continue to have jurisdiction with respect to the care, custody and control of the minor for all purposes.
"(b) That defendant shall continue to have the care, custody and control of the minor at all times, except as otherwise expressly provided herein.
"(c) That plaintiff shall have the care, custody and control of the minor for and during the following periods, to wit, (1) in 1967 and in alternate years thereafter (i. e., in each odd-numbered calendar year), beginning at 9:00 A.M. on June 15 and ending at 5:00 P.M. on August 28, (2) in 1968 and in alternate years thereafter (i. e., in each even-numbered calendar year), for the period beginning at 9:00 A.M. on June 1 and ending at 5:00 P.M. on August 28, and (3) in 1967 and in alternate years thereafter (i. e., in each odd-numbered calendar year), beginning at 9:00 A.M. on the second day of the Christmas vacation period in the school system in which the minor is then enrolled and ending at 5:00 P.M. on the next to last day of such Christmas vacation period in said school system.
"(d) That plaintiff or one of her parents must personally pick up the minor and redeliver him to defendant; that defendant need not deliver the minor to anyone other than plaintiff or one of her parents; and that plaintiff shall bear all expense incident to picking up the minor, transporting him elsewhere, and redelivering him to defendant.
"(e) That plaintiff shall continue to have the right of reasonable visitation with the minor at all reasonable times during such periods as defendant has the care, custody and control of the minor.
"(f) That defendant shall have the right of reasonable visitation with the minor at all reasonable times during such periods as plaintiff has the care, custody and control of the minor.
"(g) That, if the minor is hospitalized, the parent then having custody of the minor shall give immediate notice of such hospitalization to the other parent, together with appropriate details such as the place of hospitalization, the name of the attending physician or surgeon, and the cause of hospitalization (insofar as that may be known).
"(h) That the court costs in the Circuit Court of Greene County, Missouri, shall be taxed against and paid by plaintiff and defendant, share and share alike." *606 and (d) that all court costs in connection with the appeals docketed in this court as Nos. 8551 and 8560 should be and hereby are taxed against and payable by plaintiff and defendant, share and share alike.
HOGAN and TITUS, JJ., concur.