**John Sutton BLAIR, Plaintiff-Respondent,**

**v.**

**Mary Louise BLAIR, Defendant-Appellant.**

**No. 9399.**

Missouri Court of Appeals, Springfield District.

Jan. 21, 1974.

Motion for Rehearing or to Transfer to Supreme Court Denied Feb. 12, 1974.

Roberts & Fleischaker, Loyd E. Roberts, Ross T. Roberts, John R. Martin, Joplin, for plaintiff-respondent.

Lathrop, Koontz, Righter, Clagett, Parker & Norquist, W. H. Bates, Joseph E. Stevens, Jr., Gary S. Dyer, Kansas City, for defendant-appellant.

BILLINGS, Judge.

The Circuit Court of Jasper County granted the plaintiff-father increased visitation or temporary custody rights of his eleven-year-old son and the defendant-mother has challenged the trial court's jurisdiction to modify a Michigan decree as to the boy's custody, and, assuming requisite jurisdiction by the Missouri court contends there was an insufficient showing of change of circumstances to warrant modification of custody. We affirm.

Plaintiff and defendant were married in Jasper County in 1960 and their son was born January 1, 1963. They lived for a period of time in the State of Michigan and in April of 1966 plaintiff and defendant were divorced by the Oakland County Circuit Court of that state. The decree

vested custody of the son in the defendant with the plaintiff being granted visitation rights or temporary custody of his son during one week and two weekends of each year. The modification order here complained of would increase plaintiff's rights by his having his son for two weeks in 1972, three weeks in 1973, four weeks in 1974 and thereafter, together with four days at Christmas time in alternate years, and, visitation of two weekends each year at the place of defendant's residence.

Plaintiff, re-married and residing in the Kansas City area (Shawnee Mission, Kansas), filed this proceeding in Jasper County in March of 1972. Prior to the entry of the Michigan decree, but by stipulation of the parties and consent of that court, the defendant and the child had returned to Joplin. They lived with her parents for a time but later moved into a separate residence. Defendant commenced teaching at a public school in 1969 and was so employed when she was served with process in this suit. Although she had signed a teaching contract for the 1972–73 school year, she left Joplin with the child on May 26, 1972, and went to Florida with her brother. At the time of the hearing in this case she was continuing to live with her brother and his family in the State of Florida and expressed her intention to make that state her permanent residence. She resigned her teaching post by letter about the first of June, 1972.

■ Defendant's contention that the Michigan court had exclusive jurisdiction to modify the custodial portion of its decree and that the Circuit Court of Jasper County, Missouri, was powerless to modify that decree was fully and completely answered adversely to the defendant by Judge Cross in his scholarly and thorough opinion of Kennedy v. Carman, 471 S.W.2d 275 (Mo.App.1971). As pointed out by Judge Cross there are generally three theories of jurisdiction advanced in child custody cases: the domicile of the child, the physical presence of the child in the state,

or, the personal jurisdiction over those competing for the custody of the child.

Here, the child's domicile (that of the defendant) was in Missouri. At the time these proceedings were instituted by the plaintiff the child was physically present in this state. Even though plaintiff was a legal resident of Kansas he, by bringing this suit, subjected himself to the in personam jurisdiction of the Missouri court. The defendant, domiciled in Missouri, was personally served in Missouri. Consequently, plaintiff and defendant were both before the Missouri court and subject to its jurisdiction. In view of the extensive and persuasive authorities collected and cited by Judge Cross, in what has since been referred to as a "landmark opinion" in child custody cases [Searles v. Searles, 495 S. W.2d 759, 763 (Mo.App.1973)], we have no hesitancy in holding that the Jasper County Circuit Court had jurisdiction to modify the custody portion of the Michigan decree. Defendant's point is denied.

■ Defendant's second point is that the evidence failed to show any significant change of circumstances that would warrant modification of the custody decree, or that such modification was in the best interests of the minor son of the parties. While it is true that our review in a case of this kind is de novo, we are reminded that we are not to disturb the trial court's judgment unless we conclude that the modification is not in the best interests of the child and conflicts with the clear preponderance of the evidence. Asbell v. Asbell, 430 S.W.2d 436, 439 (Mo.App.1968).

■ The general rule, unquestioned here, is that a child custody order "may be disturbed only upon proof of changed conditions subsequent to entry of the order *coupled with* a showing that modification of the order would promote the best interest of the child . . . ." M____ L____ v. M____ R____, 407 S.W.2d 600, 602 (Mo.App.1966). Not every change calls for modification; and should occur only when the changed circumstances require modifi-

cation in the best interests of the welfare of the child. Lickteig v. Goins, 458 S.W. 2d 596, 599 (Mo.App.1970). As with the jurisdiction question, the welfare of the child is the paramount and most pressing consideration in determining whether a modification should be granted. Lickteig v. Goins, supra.

■ It would serve no useful purpose to set out in detail the evidence heard by the Special Judge in this case. The testimony of ten witnesses, the deposition of three witnesses, and various exhibits were considered by the trial court and constitute the transcript. A summary of the evidence discloses that when the parties were divorced in 1966 the plaintiff's one-week-per-year custody privilege was effected not so much by design as dictated by necessity. The arrangement adopted by the Michigan decree was a matter of agreement between the parties, plaintiff acquiescing therein because his extensive travel requirements, his short vacation period, his lack of suitable home environment, and his son's infancy made more lengthy custody periods unmanageable and impractical. In contrast, plaintiff's situation at the present time permits the allocation of more time to his family; his current employment in the Kansas City area requires only local travel and occasional absences; he has remarried and established a suitable home which facilitates more extended custody periods; his wife gets along well with his son, as do the other children in the home. Additionally, plaintiff's son has reached an age in life where he is now old enough to appreciate the companionship of his father, and yet still young enough to benefit from the father-son relationship. Plaintiff's fitness and ability to provide fatherly guidance, direction, supervision, companionship, and love is beyond any question. During the time plaintiff has had temporary custody of his son they have shared a common interest in sports and athletic events. The lower court specifically found plaintiff to be of good moral character, enjoying a good and wholesome family life, home and atmosphere.

■ The increased age of a child since the previous custody order can, itself alone, constitute a "changed circumstance" which a court may properly consider in modifying the prior custody order. Cascio v. Cascio, 485 S.W.2d 857, 859 (Mo.App. 1972). Likewise, a change in a father's situation which allows him to devote more time to his children can also constitute a "changed circumstance", justifying some modification of an earlier custody award. Asbell v. Asbell, supra, 430 S.W.2d at 438. And, our courts have recognized the fact that male children growing out of tender years need and will be benefitted by a father's influence and guidance, assuming the father is a person of appropriate character to provide these things. Kennedy v. Carman, supra, 471 S.W.2d at 289; Leaton v. Leaton, 435 S.W.2d 408, 412 (Mo.App. 1968); M_____ L_____ v. M_____ R_____, supra, 407 S.W.2d at 604.

The trial judge had the benefit of all of the evidence and the opportunity to see and form impressions that are indiscernible from a cold record. "The finding made by the trial court 'should be deferred to, unless it is apparently in conflict with a clear preponderance of the evidence and discloses a manifest abuse of discretion.'" Pelts v. Pelts, 425 S.W.2d 269, 270 (Mo.App. 1968). Finding no such conflict or abuse, the judgment is affirmed.

STONE, J., and CARVER, Special Judge, concur.

HOGAN, C. J., and TITUS, J., not sitting.