**Cheri Lynn LOVIN,**
**Petitioner–Appellant,**

v.

**Gerald Frank LOVIN,**
**Respondent–Respondent.**

No. 56851.

Missouri Court of Appeals,
Eastern District,
Division One.

April 10, 1990.

Edward C. Cody, St. Louis, for petitioner-appellant.

E. Darrell Davis, St. Charles, for respondent-respondent.

REINHARD, Judge.

Wife appeals from that part of a divorce decree awarding primary custody of the parties' child to husband. We affirm.

The parties married on December 23, 1983 and separated in January of 1987. Wife filed for dissolution of the marriage on March 24, 1987. She sought custody of child. Husband answered and cross-claimed also seeking custody of child.

Wife's father filed a motion to intervene which the court granted on July 1, 1987. He then filed a petition for custody of child in which he alleged, inter alia, "[t]hat [wife] has removed [child] from the State of Missouri without consent or court order."

At least as early as January of 1987 wife began making trips to Atlanta, Georgia to

see a man named Hart she had met in 1981 through her work and whom she previously had seen occasionally on a social basis with co-workers. During this time she took several trips, including a cruise to the British Virgin Islands, with him and others, ostensibly on business.

In May of 1987 wife took child and moved into Hart's house in Atlanta. A month or two later she began engaging in sexual relations with him and on December 18, 1988, they had a baby. Hart did not testify at trial.

Both wife and husband worked outside the home during the marriage. At the time of trial wife was working a flexible 15 hours per week for Hart and husband was working 35–50 hours a week, primarily doing paperwork at home for the business in which he holds a one-half interest as a partner.

Wife and husband agreed that most of child's relatives live in the St. Louis area and have been active and important in child's life. The testimony of all the witnesses supported the importance in child's life of his relatives living in the St. Louis area. Prior to separation husband and wife lived in St. Charles. Husband resides in the St. Louis area; wife resides in Georgia.

The court awarded primary custody of child to husband granting wife liberal temporary custody and visitation rights. The court also awarded to wife's father "reasonable visitation and temporary custody privileges."

Wife's sole point on appeal is:

The trial court erred in awarding custody of the parties' minor child, ..., to the respondent father, ..., because such an award constitutes a misapplication of the law and is against the weight of the evidence which indicates that said minor child's best interest and welfare requires that custody be awarded to his mother, petitioner,....

We will reverse a trial court's custody award only if we have a firm conviction that the judgment is wrong, that the decree has no substantial evidence to support it, that it is against the weight of the evidence, or that it erroneously declares or applies the law. *Hartig v. Hartig,* 738 S.W.2d 160, 161 (Mo.App.1987). As we have noted before, "The trial court's findings on the matter of custody are not to be lightly cast aside and we will defer to those findings unless we are firmly convinced that the welfare of these children requires other disposition." *Id. (quoting Johnson v. Johnson,* 526 S.W.2d 33, 36 (Mo.App. 1975)).

There are several factors supporting the court's award of child's custody to husband, including wife's sexual misconduct and the fact that child has particularly strong ties with wife's father who lives in the St. Louis area, the area where husband and most of child's relatives reside. While the trial court made no specific findings to support its award of custody (none were requested), it appears to us the court gave great weight to the fact that while living in Hart's home with her preschool child, wife had sexual relations with Hart and bore his baby. Although sexual misconduct alone is not necessarily sufficient to deprive a parent of custody, morals are a pertinent factor for consideration when determining the best interests of the child. *Hartig,* 738 S.W.2d at 161; *T.B.G. v. C.A.G.,* 772 S.W.2d 653, 654–55 (Mo. banc 1989). We are particularly impressed by the following statements Judge Dowd authored in *L.F.H. v. R.L.H.,* 543 S.W.2d 520 (Mo.App.1976):

It is true that a mother's adulterous conduct does not automatically mark her as unfit to have custody of her child. *In re Marriage of Cook,* 532 S.W.2d 833, 837 (Mo.App.1975). However, moral lapses of the parents should be considered by the trial court *as this conduct bears upon the custodial welfare of the child* .... [A] child's first impression of right and wrong is acquired in the home.

*Id.* at 523. (Emphasis in original). Following longstanding precedent, we presume that the trial court reviewed all the evi-

dence and awarded custody in the manner it believed would be in the best interests of the child. This presumption is based upon the trial court's better position to judge not only the credibility of the witnesses and parties directly but also their sincerity, character, and other trial intangibles which might not be completely revealed by the record. *Hartig,* 738 S.W.2d at 161.

The court's order is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law.

Judgment affirmed.

GARY M. GAERTNER, P.J., and CRIST, J., concur.