**In re the Marriage of M.P., Appellant,**

v.

**S.P., Respondent.**

**No. 56660.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 19, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 26, 1990.

Application to Transfer Denied Sept. 11, 1990.

Mark D. Hirschfeld, Clayton, for appellant.

Michael A. Gross, St. Louis, for respondent.

GARY M. GAERTNER, Presiding Judge.

Husband, M.P., appeals an order of the Circuit Court for St. Louis County which denied his motion to modify which requested custody of his five children but granted wife's, S.P.'s, motion to modify for increased child support. We reverse and remand.

Husband and wife were married on June 2, 1973. In May of 1985, the parties separated. Five children were born of the mar-

riage ranging in age from 6 to 16 years. On February 24, 1986, the marriage of the parties was dissolved. Custody of the children was to be pursuant to a joint custody plan filed by the parties which gave physical custody of the children to the wife and provided that husband should pay wife twenty dollars per week per child as child support.

At the time of the motion hearing, wife worked on the third shift at American National Can. This required her to leave home at 11:00 p.m. She did not return home until 8:00 a.m.[1] The children spent the night at their father's home, arriving between 8:00 to 8:30 p.m. Husband took the children to school and day-care in the morning and often took them to after school social activities and sporting events. Wife picked up the children after school, bathed them, fed them and had them do their homework before taking them to husband's home again.

In September of 1986, wife took an overdose of pills in a suicide attempt. Husband, who had been returning the children to wife after having them for the weekend, found wife on her bed next to the empty bottle of pills. Wife was transported to a nearby hospital where she spent approximately three to four weeks recovering. Husband took care of the children during this time. Wife is currently seeing a psychiatrist once a month.

In May of 1987, J.E., a married co-worker of wife, moved into wife's home. Wife testified at the motion hearing that all of the children know that Mr. E. is married to another woman and that she shares her bed with Mr. E. In December of 1987, wife had Mr. E.'s child. Wife testified that her children know that the baby is Mr. E.'s.[2] Mr. E., although he is still married, remains in respondent wife's home and pays half of the expenses.

In March of 1988, the oldest child wrote a note in school that indicated that he was contemplating suicide. The principal at his school testified that she spoke with him

about the note and that he expressed his emotional upset about the problems between his parents and the pressures he felt being the oldest in the family.

Following the wife's suicide attempt, husband filed his motion to modify requesting physical custody of the children. Wife filed a counter motion to modify in April of 1987. In her motion, wife requested primary custody of the children and increased child support payments. A hearing was held on these motions on September 30, 1988, December 15, 1988, and March 30, 1989. On March 31, 1989, the court entered its order maintaining the current custody arrangement and increasing child support. This appeal followed.

In reviewing appellant's claims, this court is bound by the standards set forth by our Supreme Court in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The order of the trial court must be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law or unless it erroneously applies the law. *Murphy*, 536 S.W.2d at 32.

■ This is a particularly strict standard which courts must apply with great care; particularly where the welfare and custody of children is at issue. In such cases, appellate courts should not exercise the power to set aside a decree or judgment on the ground that is against the weight of the evidence unless it is firmly convinced that the welfare of the child requires other disposition. *Johnson v. Johnson*, 526 S.W.2d 33, 36 (Mo.App., St.L.Dist.1975). We have before us such a case.

■ Although sexual misconduct may not be sufficient in and of itself to deprive a parent of custody of children, morals are a pertinent factor to be taken into consideration in determining whose custody will serve the best interest of the child. *Hartig v. Hartig*, 738 S.W.2d 160 (Mo.App., E.D. 1987). In the present case, wife took a married man into the family home and into her bed. Seven months later she bore his

---

1. Wife also works a great deal of overtime which requires her to leave for work several hours earlier.

2. Testimony at the hearing revealed that the parties' oldest child must stay at wife's home overnight to care for the baby while wife and Mr. E. are at work.

child. A court must consider how this type of ongoing adulterous conduct will effect the child's system of values and character formation. *L.F.H. v. R.L.H.*, 543 S.W.2d 520, 523 (Mo.App., St.L.Dist.1976). Here, all of the children know that wife was sexually involved with a man married to another woman. Although wife testified that Mr. E. was in the process of obtaining a divorce, as late as March 3, 1989, almost two years after Mr. E. moved in with wife, Mr. E. was still married. In addition, the oldest son testified that his mother's pregnancy had been an embarrassment to him as all of his friends knew that his parents had been divorced.

A child's first impression of right and wrong comes from the family home. While "[c]ertain conduct once looked upon by society with opprobrium does not carry the social or private stigma it once did a few short years ago ... private personal conduct by a parent which could have an effect on children during the years in which their character, morality, virtues, and values are being formed cannot be ignored or sanctioned by the courts ..." *L.F.H.*, 543 S.W.2d at 523.

Wife's current employment status must also be considered. Wife's shift requires her to leave the children with husband at around 8:00 p.m. almost every night. She does not arrive home until 7:30–8:00 in the morning. Throughout this twelve hour period, it has been husband who has cared for the children and taken them to school in the morning. Testimony at the hearing also indicates that husband took a cut in pay to ensure that he would stay on the day shift and have time to spend with the children.

This court feels that the welfare of the children will be best served in a stable home where accepted conventions and moralities are practiced. Reversed and remanded for an order consistent with this opinion.

REINHARD and CRIST, JJ., concur